IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| THI OF GEORGIA AT SHAMROCK, LLC D/B/A SHAMROCK NURSING AND REHABILITATION CENTER,<br><br>      Plaintiff,<br><br>vs.<br><br>CHERYL LYNN FIELDS, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF LAURA MAE JOSEY, WILLIAM D. JOSEY, JR., AND PAMELA GAYLE DENNEY<br><br>      Defendants. | CIVIL ACTION NO: _____ |

## COMPLAINT TO COMPEL ARBITRATION

COMES NOW, THI of Georgia at Shamrock, LLC d/b/a Shamrock Nursing and Rehabilitation Center ("Shamrock Nursing", "THI-GA" or "Facility"), Plaintiff in the above-styled action, and for its cause of action, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiff Shamrock Nursing is the trade name under which THI-GA operates. THI-GA is a Delaware limited liability company whose sole, non-managing member is THI of Georgia, LLC, which is itself a Delaware limited liability company. The sole, non-managing member of THI of Georgia, LLC is THI of Baltimore, Inc., which is a Delaware corporation with its principal place of business in Maryland. Thus, for purposes of federal diversity jurisdiction, THI of Georgia at Shamrock, LLC is deemed to be a citizen of the States of Delaware and Maryland.

2.

Defendants Cheryl Lynn Fields, William D. Josey, Jr. and Pamela Gayle Denney are Georgia citizens and surviving children of Laura Mae Josey, deceased.

3.

Based on information and belief, Ms. Josey was a Georgia citizen at the time of her death and at all times relevant to this Complaint.

4.

This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5.

This judicial district is a proper venue under 28 U.S.C. § 1391(a) and LR 2.1(b) because this case involves multiple defendants and a substantial part of the events giving rise to this Complaint claim occurred in Laurens County.

## FACTUAL BACKGROUND

**A.**  **Durable Power of Attorney**

6.

On February 26, 2010, Ms. Josey executed a Durable Power of Attorney, appointing Defendant Fields as Ms. Josey's attorney-in-fact. A true and correct copy of the Power of Attorney is attached as Exhibit A.

7.

Pursuant to the Power of Attorney, Defendant Fields had "power to act in [Ms. Josey's]

name, place and stead in any way which [Ms. Josey] could do with respect" to specific matters. (Exhibit A, p. 2).

8.

To that end, the Power of Attorney enumerates twelve areas of responsibility as to which Ms. Josey could choose to confer (or limit) authority upon her attorney-in-fact, Defendant Fields, by placing her initials next to the respective authority she wished to delegate to Defendant Fields. Ms. Josey initialed each of the twelve areas, thus conferring complete authority to Defendant Fields to act as Ms. Josey's attorney-in-fact. (*See generally* Exhibit A).

9.

As it relates to the instant Complaint, Ms. Josey authorized Defendant Fields:

> [t]o act for me in all legal matters, whether claims in my favor or against me, including but not limited to retaining attorneys on my behalf; appearing for me in all actions and proceedings, commencing actions in my name, <u>signing all documents</u>, ***submitting claims to arbitration*** or mediation, settling claims and paying judgments and settlements.

(Exhibit A, p. 5 (emphasis added)).

10.

Ms. Josey further "agree[d] that any third party receiving a duly executed copy or copy of this document may rely on and act under it." (Exhibit A, p. 6).

11.

The Power of Attorney document was signed by Ms. Josey, Defendant Fields, two witnesses, and was notarized.

12.

In signing the Power of Attorney, Defendant Fields accepted her appointment as Ms. Josey's attorney-in-fact "with full knowledge of the responsibilities imposed on [her]." (Exhibit

3

A, p. 9).

13.

The Power of Attorney became "effective immediately, and shall not be affected by any subsequent disability or incapacity of [Ms. Josey]."  (Exhibit A, p. 1).

14.

Several months later, on September 3, 2010, Ms. Josey was admitted to Shamrock Nursing.  A true and correct copy of the Admission Agreement is attached as Exhibit B.

15.

Pursuant to her authority as Ms. Josey's attorney-in-fact, Defendant Fields executed the Admission Agreement on behalf of Ms. Josey, as her "Durable Power of Attorney for Health Care/ Legal Guardian/ Responsible Party."  (Exhibit B, p. 1).

16.

In that same capacity, Defendant Fields executed a Facility-Resident/ Representative Arbitration Agreement on behalf of Ms. Josey.  A true and correct copy of the Arbitration Agreement is attached as Exhibit C.

**B.** **Arbitration Agreement**

17.

The Arbitration Agreement, a stand-alone document, was executed between Shamrock Nursing, Defendant Fields, and Ms. Josey.  The agreement was signed by Defendant Fields as Ms. Josey's "Representative" (Exhibit C, ¶ 1).

18.

In the sentence immediately preceding Defendant Field's signature, the Arbitration Agreement states that "[b]y []/her signature below, [Defendant Fields] represents that []/she has

the authority to sign on [Ms. Josey's] behalf so as to bind [Ms. Josey] *as well as [Defendant Fields]*. (Exhibit C, ¶ 7 (emphasis added)). Indeed, Defendant Fields had the authority to "submit[] claims to arbitration", pursuant to her role as attorney-in-fact for Ms. Josey. (Exhibit A, p. 5).

19.

The Arbitration Agreement provides, in part:

> It is further understood that in the event of *any controversy or dispute* between the parties. . .arising out of or relating to Facilitiy's Admission Agreement, or breach thereof, or relating to the provisions of care or services to [Ms. Josey], including but not limited to *any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind*; or whether or not there has been a violation of any right or rights granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, *then the parties agree that such Dispute(s) shall be resolved by arbitration*, as provided by the National Arbitration Forum Code of Procedure.
>
> \*   \*   \*   \*
>
> **I understand and agree that I am giving up and waiving my right to a jury trial.**

(Exhibit C, ¶¶ 3, 6 (italics and underline added, bold in original)).

20.

The Arbitration Agreement further provides that "[i]t is the intention of the parties to this Agreement to bind not only themselves, but also their successors, assigns, heirs, personal representatives, guardians or any other persons deriving their claims through or on behalf of Resident." (Exhibit C, ¶ 1). Moreover, under the Arbitration Agreement, Defendant Fields acknowledged that "she [was] not required to use [Shamrock Nursing] for [Ms. Josey's] healthcare needs and that there are numerous other health care providers in the State where [the Facility] is located that are qualified to provide such care." (Id.)

21.

The parties further acknowledged and agreed that "the enforcement of this Arbitration Agreement shall be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any contrary provision of this Agreement or contrary state law." (Exhibit C, ¶ 5).

22.

Finally, under the Arbitration Agreement, the parties agreed that the "Agreement shall remain in effect for all care rendered at [the Facility] and shall survive any termination or breach of this Agreement or the Admission Agreement."  (Exhibit C, ¶ 7).

**C.      <u>Admission Contract</u>**

23.

Like the Arbitration Agreement, by signing the Admission Contract as the Representative of Ms. Josey, not only was Ms. Josey bound by the terms of the Agreement, but Defendant Fields was also bound as well.  The Admission Contract, provides that as the Representative, Defendant Fields "may act in more than one capacity and will be bound by the applicable terms and conditions of this Agreement."  (Exhibit B, § I, ¶ 4).

**D.      <u>Other Documents Signed by Defendant Fields</u>**

25.

Other admission documents show that Defendant Fields was responsible for Ms. Josey relevant to the care she received.  Shamrock Nursing's New Admission Information form designates Defendant Fields as the "Responsible Party" for patient orders, and the Admission Record similarly notes that Defendant Fields was the "Family Member Responsible, Primary Financial Contact."  (See Exhibit D).

26.

In addition to the Admission Contract and Arbitration Agreement, Defendant Fields signed other documents relating to Ms. Josey's treatment. Shamrock Nursing's Discharge Resident Medication Transfer records were signed by Defendant Fields when Ms. Josey left the Facility. By executing the discharge medication records as Ms. Josey's "Guardian or Responsible Party", Defendant Fields:

> accept[ed] complete responsibility for. . .all payments due provider. . .and accept[ed] complete responsibility for the correct administration of the. . .medications. . .[and further] authorize[d] Omnicare Pharmacy to bill [her] insurance for these medications. . .[and] guarantee[d] payment to Omnicare Pharmacy for any and all charges not covered by insurance and for any co-pay charges incurred.

(Exhibit E, attached hereto).

27.

In the documents produced to another defendant in the underlying state court action, Defendant Fields signed several Hospice Aide Progress Notes on behalf of her mother, Ms. Josey, one month before Ms. Josey was admitted to Shamrock Nursing. (See Progress Notes, attached hereto as Exhibit F).

28.

Based on reasonable inquiry and belief, Defendant Fields was Ms. Josey's primary care giver leading up to Ms. Josey's admission to Shamrock Nursing. (See Hospice Assessments, attached hereto as Exhibit G).

29.

Defendant Fields also signed a Georgia Advance Directive for Health Care ("Advance Directive") on January 15, 2010, which authorized Defendant Fields to make health care

7

decisions on behalf of Ms. Josey. (See Exhibit H).

30.

By signing these additional documents, Defendant Fields further represented to the Facility that she had, and was exercising, proper authority to make decisions for Ms. Josey regarding her residency and the care and treatment she was to receive.

31.

Upon information and belief, Ms. Josey died on June 26, 2011.

32.

Upon information and belief, Defendant Fields was later appointed to act as the personal representative of Ms. Josey's wrongful death estate on August 5, 2011.

33.

On November 9, 2012, Defendants filed a civil action in the State Court of Gwinnett County, styled *Cheryl Lynn Fields et. al. v. William D. Taylor, MD, et. al.,* Civil Action File No. 12-C-07343-3. A true and correct copy of Defendants' Complaint is attached as Exhibit I. In the State Court Action, Defendants allege multiple claims against Plaintiff, all of which are directly related to care and treatment that Ms. Josey received while at Shamrock Nursing: violation of Bill of Rights for Residents of Long-Term Care Facilities (Count III); Wrongful Death (Count IV); Pain and Suffering (Count V); Negligence Per Se (Count VI); Violation of Federal Statutes and Regulations (Count VII); Preventing Other Providers from Providing Treatment (Count VIII); and Punitive Damages (IX).

## CAUSE OF ACTION TO COMPEL ARBITRATION
### (Federal Arbitration Act, 9 U.S.C. § 4)

34.

Plaintiff incorporates by reference the allegations set forth above, as if set forth fully herein.

35.

The Federal Arbitration Act ("FAA") mandates arbitration of claims that are subject to a written arbitration agreement and that affect interstate commerce. Specifically, the FAA requires arbitration where (a) there is a valid, written arbitration agreement, and (b) a dispute is within the scope of the agreement. Section 2 of the FAA provides that:

> A written provision in any. . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,. . . .***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 4 of the FAA further provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

36.

In actions involving written arbitration agreements, the FAA requires that such actions be stayed pending resolution of the arbitration process:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties ***stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding. with such arbitration.

9 U.S.C. § 3 (emphasis added).

37.

Defendant Fields signed the Arbitration Agreement on behalf of Ms. Josey, pursuant to the express authority delegated to Defendant Fields in the Durable Power of Attorney and Advance Directive documents. (See Exhibits A and H).  Thus, in her capacity as her mother's attorney-in-fact and designated health care agent, Defendant Fields had both actual and apparent authority to act as Ms. Josey's agent.  Accordingly, Ms. Josey was bound by the Arbitration Agreement, as is Defendant Fields who "stands in the shoes" of Ms. Josey as the representative of her estate.  Under the Arbitration Agreement, "[i]t is the intention of the parties to this Agreement to bind not only themselves, but also their successors, assigns, heirs, personal representatives, guardians or any other persons deriving their claims through or on behalf of Resident." (Exhibit C, ¶ 1).

38.

In addition to being a party to the Arbitration Agreement in her own right, Ms. Josey was a third-party beneficiary of the Arbitration Agreement between Defendant Fields and Shamrock Nursing.  As the personal representative of Ms. Josey's estate, Defendant Fields stands in the shoes of Ms. Josey insofar as she was a party to, and legally obligated to comply with, the Arbitration Agreement.  Therefore, Defendant is bound to resolve "***any*** controversy or dispute"

with Plaintiffs, "including but not limited to *any* alleged tort, personal injury, negligence or other claim," by arbitration. (Exhibit C, ¶¶ 3, 6 (emphasis added)).

39.

Defendants' causes of action against Plaintiff in the State Court Action are within the scope of, and subject to, the Arbitration Agreement. The Arbitration Agreement bars the assertion of these claims in any civil action and, instead, requires that they be resolved by arbitration. Consequently, Defendants' filing the State Court Action is in direct violation of the Arbitration Agreement.

40.

The Admission Contract constitutes a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2. Among other things, Medicare paid a portion of the costs for the care of residents who lived at the Facility. (See Affidavit of Kenneth Tabler, Exhibit J)  In addition, Shamrock Nursing was certified to, and did, receive payment from the Georgia Medicaid program, a substantial portion of which is funded by the Federal government. (Exhibit J).

41.

Shamrock Nursing also purchased equipment, goods and services from vendors in other States that were used for the treatment and care of Ms. Josey and other residents. (Exhibit J). These activities, in the aggregate, affect and involve interstate commerce, thus subjecting the Arbitration Agreement to the FAA.  Moreover, the parties expressly agreed that the Arbitration Agreement "shall be governed by [FAA]." (Exhibit C, ¶ 5).

42.

Equitable estoppel also compels Defendants to arbitrate their claims against Plaintiff

pursuant to the Arbitration Agreement because the claims are based on Plaintiff's alleged breaches of obligations and duties of care that arise from the Admission Contract, of which the Arbitration Agreement is a part. After the Arbitration Agreement was signed by Defendant Fields, it became an integral part of the Admission Contract.

43.

The Admission Contract was the foundation of Shamrock Nursing's relationship with Ms. Josey and Defendant. The statutory and common law duties and standards of care which Defendants allege that Plaintiff owed to Ms. Josey, but failed to fulfill, derive directly from the Facility's agreement in the Admission Contract to admit Ms. Josey as a resident and to provide services to her. Defendants' own Complaint is replete with allegations which make this point clear. (*See, e.g.*, 63 subparts to ¶ 68 of Exhibit I) (listing numerous federal statutes and regulations purportedly establishing "minimum standards" of care that skilled nursing facilities owe to residents, which Plaintiffs here allegedly violated in the treatment provided to Ms. Josey). Because the Admission Contract is the basis of Defendants' claims against Plaintiff, Defendants are estopped from repudiating the validity of the Arbitration Agreement, which is a part of the Admission Contract.

44.

Therefore, pursuant to the Arbitration Agreement, FAA, and applicable law, Plaintiff is entitled to an order compelling Defendants to submit their claims to arbitration.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff is entitled to, prays for, and demands a judgment against Defendants as follows:

    a.    That process issue and Defendants be served according to law;

      b.      That this Court Order Defendants to arbitrate their claims asserted against Plaintiff in the State Court Action, in accordance with the Arbitration Agreement or, in the alternative, dismissing that matter without prejudice; and

      c.      That this Court Order such other relief as the Court may deem just and proper.

Respectfully submitted this 26th day of April, 2013.

**DREW ECKL & FARNHAM, LLP**

*/s/ Stevan M. Miller*
Stevan M. Miller
***State Bar of Georgia No. 508375***
Lisa R. Richardson
***State Bar of Georgia No. 604074***

880 W. Peachtree St. (30309)
P.O. Box 7600
Atlanta, GA 30357-0600
Telephone: (404) 885-6348
Facsimile: (404) 876-0992
E-mail: smiller@deflaw.com
E-mail: lrichardson@deflaw.com
*Attorneys for Plaintiff*
3580176/1
06211-083749

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| THI OF GEORGIA AT SHAMROCK, LLC D/B/A SHAMROCK NURSING AND REHABILITATION CENTER,<br><br>      Plaintiff,<br><br>vs.<br><br>CHERYL LYNN FIELDS, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF LAURA MAE JOSEY, WILLIAM D. JOSEY, JR., AND PAMELA GAYLE DENNEY<br><br>      Defendants. | CIVIL ACTION NO: _____ |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of *COMPLAINT TO COMPEL ARBITRATION* with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

John W. Jonap, Esq.
Law Offices of Jonap & Associates, P.C.
3758 LaVista Road – Suite 200
Atlanta, GA  30084

Paul D. Hermann, Esq.
Paul D. Hermann, P.C.
Candler Building, Suite 1112
127 Peachtree Street
Atlanta, GA  30303

George A. Pennebaker, Esq.
41 Courthouse Square
P.O. Box 232
Dallas, GA  30132

David N. Nelson, Esq.
Emmitte H. Griggs, Esq.
Chambless, Higdon, Richardson, Katz & Griggs, LLP
Highridge Centre
3920 Arkwright Road, Suite 405
Macon, GA  31210

This 26th day of April, 2013.

*/s/ Stevan M. Miller*
Stevan M. Miller
***State Bar of Georgia No. 508375***
Lisa R. Richardson
***State Bar of Georgia No. 604074***

**DREW ECKL & FARNHAM, LLP**
880 W. Peachtree St. (30309)
P.O. Box 7600
Atlanta, GA 30357-0600
Telephone: (404) 885-6348
Facsimile: (404) 876-0992
E-mail: smiller@deflaw.com
E-mail: lrichardson@deflaw.com
*Attorneys for Plaintiff*
3580176/1
06211-083749